**UNITED STATES of America ex rel. Lorenzo CATANZARO, Relator-Appellant,**

v.

**Vincent R. MANCUSI, Warden, Attica State Prison, Respondent-Appellee.**

**Nos. 49, 50, Dockets 31361, 32141.**

United States Court of Appeals
Second Circuit.

Argued Sept. 17, 1968.

Decided Dec. 2, 1968.

Edwin L. Gasperini, Gasperini, Koch & Savage, New York City, for appellant.

Joel Lewittes, Asst. Atty. Gen. of State of New York (Louis J. Lefkowitz, Atty. Gen. of State of New York), for respondent-appellee.

Before LUMBARD, Chief Judge, WATERMAN and HAYS, Circuit Judges.

HAYS, Circuit Judge:

A New York county grand jury indicted appellant Lorenzo Catanzaro jointly with Warren Hill, Jerry McChesney, and Joseph Lonergan for murder in the first degree. A motion to sever the trial of Lonergan was granted. Lonergan became a prosecution witness. The motions of Catanzaro, Hill and Mc-

Chesney for severance were denied. They were tried in the Court of General Sessions of the County of New York and convicted. McChesney was sentenced to life imprisonment; Catanzaro and Hill were sentenced to death. The death sentences were subsequently commuted to life imprisonment.

Catanzaro and Hill appealed to the New York Court of Appeals. Hill's conviction was affirmed with three judges dissenting; Catanzaro's was affirmed by a unanimous court. People v. Hill, 13 N.Y.2d 842, 242 N.Y.S.2d 358, 192 N.E.2d 232 (1963).

The Supreme Court granted Catanzaro's petition for certiorari, vacated the judgment, and remanded the case for further proceedings not inconsistent with Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), decided the same day. Catanzaro v. New York, 378 U.S. 573, 84 S.Ct. 1931, 12 L.Ed.2d 1040 (1964).

The New York Court of Appeals, on remand, remitted the case to the trial court for proceedings consistent with People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), to determine whether Catanzaro's confessions, which were admitted at his trial, were voluntary. People v. Hill, 15 N. Y.2d 722, 256 N.Y.S.2d 933, 205 N.E. 2d 199 (1965).

The trial court held the required hearing and found Catanzaro's confessions to have been voluntary. The New York Court of Appeals affirmed, 17 N.Y.2d 185, 269 N.Y.S.2d 422, 216 N.E.2d 588, and the Supreme Court denied certiorari, 385 U.S. 875, 87 S.Ct. 152, 17 L.Ed.2d 102 (1966).

Catanzaro then applied for a writ of habeas corpus, claiming that his conviction was invalid because it was based on (1) the introduction into evidence of involuntary confessions, (2) an illegal search of his hotel room prior to his arrest, and (3) perjury of one of the prosecution's major witnesses. His application was denied; the order of denial is before us on this appeal.

Defendant Hill, meanwhile, relying on the trial court's refusal to grant his motion to sever his trial from the trial of McChesney and Catanzaro, both of whose confessions were introduced at the trial, successfully sought a writ of habeas corpus in the Southern District of New York. United States ex rel. Hill v. Deegan, 268 F.Supp. 580 (S.D. N.Y.1967). Catanzaro then brought a second habeas corpus petition, arguing that the trial court's failure to grant *his* motion for a separate trial deprived him of the right to a fair trial, and that his sentence ought also be vacated. The petition was denied solely on the ground that the trial transcript, an examination of which was deemed necessary to reach a determination, was before this court and was therefore not available to the district court. That order of denial is the second of the two orders appealed from here.[1]

We affirm both orders.

## I. *Factual Background*

Richard Valk, a United Parcel Service driver, was shot and killed on May 17, 1961, during the attempted robbery of his truck on 53rd Street at Second Avenue in Manhattan. At appellant's trial Randolph Gibbs, a prosecution witness, testified that he had turned onto 53rd Street in his employer's automobile just as the attempted robbery was being committed. He was forced to slow down as he was approaching a United Parcel Service truck because a car, identified by him as a black 1960 Oldsmobile convertible, was double parked a short distance in front of the truck. Upon slowing down Gibbs saw one of the defendants scuffling with the driver of the UPS truck, and a second defendant coming out of the rear of the truck. The scuffling continued for about 10 seconds.

Gibbs saw one of the defendants raise a gun; he heard two shots. The UPS driver fell to the ground. The two defendants ran in front of Gibbs' car and jumped into the Oldsmobile. Appellant was behind the wheel of the Oldsmobile.[2]

Gibbs noted the license number of the Oldsmobile as it sped away. He stopped at 47th Street and Park Avenue to report the shooting to two policemen and he wrote down the license number of the Oldsmobile for them.

Police investigations disclosed that a large number of parking tickets had been issued within a short period of time to an Oldsmobile with the license number reported by Gibbs. All the tickets pertained to an area of approximately 35 square blocks. The police concentrated their search in that area.

At about 9:30 p.m. of the day of the murder the police learned that the occupant of Room 207 at the Beechwood Hotel (which was within the area of intensive search) was the driver of a black Oldsmobile that matched the description of the getaway car.

The occupant of Room 207 was registered under the name of Grosso but was in fact appellant Catanzaro. Without obtaining either an arrest warrant or a search warrant two police officers went to Room 207 to arrest the occupant. When no one answered their knock on the door the police had a hotel clerk admit them. Shortly thereafter several detectives arrived and stationed themselves in the hotel; two remained in Catanzaro's room.

In the room was found a mutilated traffic ticket bearing a license number issued in a previous year for the Oldsmobile.

At about 1:00 a.m. on May 18—some three hours after the police first arrived

---

1. After the denial of the second habeas corpus petition, Catanzaro, again relying on the success of his codefendant Hill in prosecuting his habeas corpus petition, applied to the state court for a writ of error coram nobis. That application was denied, as was Catanzaro's application for permission to appeal to the New York Court of Appeals. The Supreme Court denied certiorari, 390 U.S. 1031, 88 S.Ct. 1425, 20 L.Ed.2d 289 (1968).

2. Defendant Joseph Lonergan, who was accused of planning the robbery, was not at the scene of the crime.

at the hotel—Catanzaro returned. As he reached his room and began to open the door, the police officers inside the room saw him standing in the public hallway with a package under his left arm and a small bag in his left hand. When a detective who had followed Catanzaro up from the lobby asked him if he was Grosso he appeared to reach for the package under his arm. The officers who were in the room rushed forward, grabbed Catanzaro, pushed him against the wall, and struggled with him in the hallway.

One of the detectives seized the package from under Catanzaro's arm and withdrew from it a loaded gun. With the struggle still in process the detective said, "I have the gun. I have the murder weapon." At that point Catanzaro said, "No, no, I was only driving the car. I didn't do it. The kid did it."

Catanzaro was handcuffed, and searched and then taken to the hotel lobby where he made further incriminating statements. At the police station he answered questions put to him first by the police and later, with a stenographer present, by a representative of the district attorney's office. All these statements were introduced against Catanzaro at the trial.

## II.

Catanzaro contends that his confessions to the police and the assistant district attorney were involuntary and that their admission into evidence violated the fourteenth amendement.

■ The *Huntley* hearing afforded appellant by the state court, affirmed, 17 N.Y.2d 185, 269 N.Y.S.2d 422, 216 N.E.2d 588, cert. denied, 385 U.S. 875, 87 S.Ct. 152, 17 L.Ed.2d 102 (1966), found that Catanzaro made his incriminating statements in an effort to demonstrate that his participation in the crime was minimal and to exculpate himself, and that the confessions were not the product of threats, coercion, or physical violence. There is nothing in the record to suggest that the *Huntley*

hearing was not full and fair, or that the material facts were not adequately developed. Indeed appellant makes no such claim. We must presume, therefore, that the state findings of fact are correct. See 28 U.S.C. § 2254(d) (Supp. III 1965–1967).

## III.

Appellant contends that his confessions were the fruits of an illegal search and seizure and that their admission into evidence violates the fourth amendment. He argues that the search of his hotel room was illegal, and that but for that search, which disclosed a traffic ticket linking him to the getaway car, the police would not have had probable cause to arrest him.

■ In Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), the Supreme Court held that the test for determining whether there is probable cause for the police to effect an arrest without a warrant is "whether at [the moment the arrest was made] the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."

Even before the police searched Catanzaro's hotel room they had an eyewitness description of him and of the getaway car and also had the license number of the car. The police learned from two guests at the hotel that a car answering the description of the getaway car was frequently parked in front of the hotel, and from the hotel clerk that the driver of the car had rented Room 207. That knowledge was sufficient to justify the police in entering Catanzaro's room for the purpose of apprehending and arresting him.

■ It is unnecessary to consider appellant's claim that the police search of his hotel room was illegal since there was probable cause to arrest him without regard to the results of the search and

since the results of the search were not introduced against him at the trial.

## IV.

■ Appellant next contends that the writ of habeas corpus should be granted because of the post-verdict disclosures concerning the perjury and criminal record of the eyewitness, Gibbs.

During the trial Gibbs frequently changed the story that he told the jury. He testified both that he had and had not seen a lineup in connection with this case; he testified that he had seen two and that he had seen three of the defendants at the same lineup; and he testified that Hill and not McChesney, and then McChesney and not Hill, had shot Valk.

Gibbs also testified that he had been honorably discharged from the Army and that he had been wounded and drawn disability pay. After the verdict had been entered, but before sentencing, the district attorney informed the court that after the trial he had learned that Gibbs had perjured himself in testifying that his discharge from the Army was honorable. Shortly thereafter the district attorney learned and informed the court that Gibbs had a criminal record—three convictions on theft and robbery charges —and that there was no record of any disability payments made to Gibbs.

Catanzaro's codefendant Hill raised the same issue in his petition for habeas corpus. After a full evidentiary hearing, the court concluded that whatever error might have been committed was "insufficient in itself to warrant granting of the writ." United States ex rel. Hill v. Deegan, supra, 268 F.Supp. at 592. We agree.

There is nothing in the record to indicate that the district attorney consciously or intentionally used perjured testimony. Cf. Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967); Napue v. Illinois, 360 U.S. 264, 79 S.Ct.

1173, 3 L.Ed.2d 1217 (1959). Nor is there anything in the record to indicate that the district attorney suppressed evidence of Gibbs' criminal record. Cf. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). It was through the disclosure of the district attorney to the court that the defendants learned of Gibbs' perjury and of his undisclosed criminal record.

In addition, the witness, however self-contradictory in other respects, consistently identified Catanzaro as the driver of the getaway car. We conclude that there was no such "transgress[ion] of the imperatives of fundamental justice" as would violate the fourteenth amendment. Blackburn v. Alabama, 361 U.S. 199, 211, 80 S.Ct. 274, 282, 4 L.Ed.2d 242 (1960).

## V.

■ Catanzaro's final claim is that the failure of the trial court to grant his motion for a separate trial prejudiced his right to a fair trial. He relies on Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and United States ex rel. Hill v. Deegan, supra, and argues that because the confession of the codefendant McChesney was introduced at the joint trial the writ of habeas corpus should be granted here.

The reasoning of *Hill* and *Bruton* is not persuasive here. Both of those cases involved a defendant who did not confess and who was tried along with a codefendant who did. In our case Catanzaro himself confessed and his confession interlocks with and supports the confession of McChesney.

Where the jury has heard not only a codefendant's confession but the defendant's own confession no such "devastating" risk attends the lack of confrontation as was thought to be involved in *Bruton*. See 391 U.S. at 136, 88 S.Ct. 1620.

Affirmed.