**UNITED STATES of America ex rel. Carlos ORTIZ, #59524, Petitioner-Appellant,**

v.

**Harold FRITZ, Superintendent of Auburn Correctional Facility, Auburn, New York, Respondent-Appellee.**

**No. 374, Docket 72-1973.**

United States Court of Appeals, Second Circuit.

Argued Jan. 18, 1973.

Decided March 26, 1973.

**38**

Julia Pamela Heit, New York City (William E. Hellerstein and Robert Kasanof, New York City, of counsel), for petitioner-appellant.

Brenda Soloff, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., and Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for respondent-appellee.

Before FRIENDLY, Chief Judge, and OAKES and TIMBERS, Circuit Judges.

OAKES, Circuit Judge:

■ This appeal from the denial of a habeas corpus petition raises a serious question as to the applicability of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), in the case of "interlocking" confessions of codefendants. Only because we consider ourselves bound by United States ex rel. Catanzaro v. Mancusi, 404 F.2d 296 (2d Cir. 1968), cert. denied, 397 U. S. 942, 90 S.Ct. 956, 25 L.Ed.2d 123 (1970), and its progeny in this circuit,[1] do we affirm.

The original conviction was for murder in the first degree in the New York state courts.[2] Appellant, Carlos Ortiz, his brother Alfredo and one Doel Valencia each had confessed to the October, 1964, killing of Alexander Helmer, a resident of the Bronx, in the course of robbing him. The confessions were held voluntary following a *Huntley* hearing. While there apparently is a pending habeas case relating to the voluntariness of Alfredo's confession, no claim is advanced here that any of the three were involuntary, much less appellant's. The only basis for the convictions was the confessions, since there was no evidence independent of the confessions having

---

1. United States ex rel. Duff v. Zelker, 452 F.2d 1009 (2d Cir. 1971), cert. denied, 406 U.S. 932, 92 S.Ct. 1807, 32 L.Ed.2d 134 (1972); United States ex rel. Sloan v. McMann, 415 F.2d 275 (2d Cir. 1969); United States ex rel. Dukes v. Wallack, 414 F.2d 246 (2d Cir. 1969). *See also* Metropolis v. Turner, 437 F.2d 207 (10th Cir. 1971). While these cases, as well as appellant's, were tried before *Bruton*, *Bruton* is to be applied retroactively, both as to state and federal prosecutions. Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968).

2. Supreme Court, Bronx County (Lyman, J.), aff'd, People v. Ortiz, 30 A.D.2d 510, 294 N.Y.S.2d 625 (1st Dep't 1968), aff'd, 25 N.Y.2d 863, 303 N.Y.S.2d 879, 250 N.E.2d 872 (1969), cert. denied, 397 U.S. 1011, 90 S.Ct. 1242, 25 L.Ed.2d 425 (1970). It should be noted that Chief Judge Fuld and Judge Burke of the Court of Appeals concurred solely because they considered themselves bound by People v. McNeil, 24 N.Y.2d 550, 301 N.Y.S.2d 503, 249 N.E.2d 383 (1969), which in turn relied heavily on Catanzaro v. Mancusi, 404 F.2d 296 (2d Cir. 1968), cert. denied, 397 U.S. 942, 90 S.Ct. 956, 25 L.Ed.2d 123 (1970).

a connection to the appellant. That is to say, there were no witnesses to the slaying, and there was no scientific evidence that would have connected appellant or his codefendants to the scene of the crime. True, two Bazooka bubble gum wrappers were found in the deceased's apartment, but it was only through appellant's own confession, in which he stated that he left Bazooka wrappers at the scene, that they were tied to him.

*Bruton*, it will be recalled, held that the sixth amendment confrontation rights of the defendant Bruton, who had made no admissions or confessions, had been violated by the admission of a confession of his codefendant, Evans, who did not take the stand, even though the trial court—following Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957)—had charged the jury that the codefendant's confession should be disregarded in determining Bruton's guilt or innocence. *Catanzaro* held that because Catanzaro had himself confessed and his confession interlocked with and supported his codefendant's confession, "no such 'devastating' risk attends the lack of confrontation as was thought to be involved in *Bruton*." 404 F.2d at 300.

There is some question here whether the appellant's confession did "interlock," or in the words of Judge Lasker below was "substantially identical," with the others. Each confession involved appellant, his brother Alfredo, the third defendant, Valencia, and one "Negrito" who is said by appellant and Valencia to have done the actual stabbing of the victim. Appellant's and Valencia's confessions each told of the stabbing after the victim put up some resistance. All three confessions said that Alfredo Ortiz was posted as lookout, and in none of them is it claimed that he saw the actual stabbing.

■ Appellant claims that the confessions do not interlock: first, because Alfredo's confession in no way covered the slaying itself; second, because the confessions placed the crime at substantially different times. Although the three confessions do not all cover the same facts, they do interlock and are consistent as regards the slaying. As to the time of commission, there is a considerable discrepancy. Appellant's and his brother's confessions fixed the crime at noon, while Valencia's confession set it at 9:00 p. m.[3] This means that one or more of the confessions is false or erroneous. But we do not think it takes away from the "interlocking" aspect of the confessions. As to motive, plot and execution of the crime they are essentially the same.

Appellant's principal argument is that *Bruton* applies here because *Catanzaro* and progeny are really applications of Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). *Harrington* held that admission of codefendants' confessions after *Bruton* was harmless constitutional error because a statement by Harrington placed him at the scene of the crime, and other incriminating evidence was so "overwhelming . . . that this violation of *Bruton* was harmless beyond a reasonable doubt. . . ." 395 U.S. at 254, 89 S.Ct. at 1728. Appellant argues here that because there was no such other evidence—though on this score the Bazooka bubble gum wrappers do constitute independent evidence, albeit based on Ortiz's own confession—the *Bruton* violation was certainly not "harmless beyond a reasonable doubt." We would have to say that while the gum wrappers were perhaps not "overwhelming," they were substantial, and they do corroborate his own statement as to his presence at the scene. We are not unmindful, moreover, of Mr. Justice White's dissenting comment in *Bruton* (which did not involve the defendant's own confession) that "the defendant's own confession is probably the most probative and damaging evidence that can

3. A disinterested witness had testified that she saw the victim alive between 7:00 p. m. and 7:30 p. m.

be admitted against him." 391 U.S. at 139, 88 S.Ct. at 1630.[4] Since the voluntariness of the confessions has not been argued, it would seem that here, as in *Harrington*, the constitutional error would be harmless.

The teaching of *Catanzaro et al.* is, however, that *Bruton* is inapplicable where co-confessions "interlock."[5] Existence of independent evidence linking the defendant to the scene and the crime —though there were some in *Catanzaro*, not alluded to except in the statement of facts—is not a factor under *Catanzaro*. The *Catanzaro* rationale is that the " 'devastating' risk" that a jury will not be able to disregard the codefendant's confession is not present when the defendant's own confession is in evidence. 404 F.2d at 300.[6]

This rationale does not seem to go, however, to the second underpinning of *Bruton*, viz., that the credibility of a codefendant's confession is "inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully . . ." 391 U.S. at 136, 88 S.Ct. at 1628. The element of unreliability, as the Court said, is "intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination." *Id.* Despite the defendant's own confession, the jury may still look to the incriminating statements of a codefendant, or to the

cumulative impact of those statements coupled with the defendant's own statements, to find the defendant's guilt— despite the "placebo"[7] of curative instructions. *Cf.* People v. Jackson, 22 N.Y.2d 446, 293 N.Y.S.2d 265, 239 N.E. 2d 869 (1968) (separate trials ordered for three codefendants, all of whom had confessed). And while no issue of voluntariness has here been raised, the fact is that if in the separate habeas case now pending, Alfredo's confession is held to have been made involuntarily, inadmissible evidence will have been used to convict his brother, the appellant here.

■ Thus, we are somewhat uncomfortable with the implications of *Catanzaro*. Yet it is now the law of this circuit. It was followed in United States ex rel. Sloan v. McMann, 415 F.2d 275 (2d Cir. 1969), and in United States ex rel. Duff v. Zelker, 452 F.2d 1009 (2d Cir. 1971), cert. denied, 406 U.S. 932, 92 S.Ct. 1807, 32 L.Ed.2d 134 (1972), although *Sloan* rested on the alternative ground of harmless error. If it is to be overruled, it will have to be by the Supreme Court, absent the requisite en banc vote which—through prior circulation of this opinion—has not ensued.

Here we emphasize that there is no issue of voluntariness of any of the codefendants' confessions. Nor is there any content of the codefendants' confessions that implicates appellant any more

---

4. Mr. Justice White's comment was made in discussing Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the purport of which was that the trial judge must not permit the jury to hear the defendant's own confession until there has been at least a trial court finding of voluntariness after a hearing out of the presence of the jury.

5. The Tenth Circuit has said that it is a "legal nicety" whether the case is "without" *Bruton* (per *Catanzaro*), or "within" it but with only harmless error (per *Harrington*). Metropolis v. Turner, *supra*, 437 F.2d at 208–209. This circuit has relied on both *Catanzaro* and *Harrington* in United States ex rel. Dukes v. Wallack, 414 F.2d 246, 247 (2d Cir. 1969).

6. *Bruton* does not quite speak of a "devastating risk" as such, but rather speaks of "risk" in saying,

> Nevertheless, as was recognized in Jackson v. Denno, *supra*, there are some contexts in which the risk that the jury will not, or cannot follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.

391 U.S. at 135, 88 S.Ct. at 1627. The Court then goes on to refer to the incriminations in the codefendant's confession being "devastating" to the defendant. 391 U.S. at 136, 88 S.Ct. 1620.

7. *See* United States v. Delli Paoli, 229 F.2d 319, 321 (2d Cir. 1956), aff'd, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957).

in the commission of the crime than does his own confession—in fact, of the three, his own is the most significant.

We therefore affirm the judgment below.