Isadore **HODGES, Jr., and Andrew Lewis, Jr., Petitioners-Appellants,**

v.

James **ROSE, Warden, Respondent-Appellee.**

Nos. 77–1374 and 77–1375.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 6, 1977.

Decided Feb. 14, 1978.

Robert E. Rose, Memphis, Tenn. (court-appointed), for Andrew Lewis, Jr.

Brooks McLemore, Jr., Atty. Gen. of Tennessee, John F. Southworth, Jr., Nashville, Tenn., for respondent-appellee.

Forest M. Norville, Memphis, Tenn. (court-appointed), for Isadore Hodges.

Before EDWARDS, CELEBREZZE and PECK, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal by two Tennessee prisoners from an order of the District Court denying their petition for a writ of habeas corpus. Appellants Hodges and Lewis were convicted in a 1971 joint trial for murder in the perpetration of rape.[1] They are currently serving 99 year sentences at the Tennessee State Penitentiary in Nashville.[2]

In the 1971 prosecution, Appellants were charged with the rape-murder of a sixty year old woman in an abandoned church in Memphis.[3] As part of its case in chief, the State introduced separate written statements obtained from both Appellants the day after the crime.[4] In these statements, both admitted that they had jointly dragged the woman into the church and subsequently raped her.[5] However, they both disclaimed responsibility for the murder, each accusing the other of delivering the beatings that led to the woman's death.

The statements were admitted in evidence over objection by counsel for both Appellants, but with the names of the other deleted. Blanks were inserted in Hodges' statement wherever Lewis' name appeared; likewise, blanks were inserted in Lewis' statement wherever Hodges' name appeared. Lewis subsequently took the stand in his own defense. Hodges did not testify. The trial judge cautioned the jury both at the time the statements were introduced and in his final instructions that the statements of each defendant were not to be considered in determining the guilt of his codefendant.

Appellants both maintain that admission of the statements at their trial resulted in a denial of their rights under the confrontation clause of the sixth amendment. Both rely on *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), where the Supreme Court held that the admission of a confession of a codefendant

1. At the time of the trial, the pertinent Tennessee statute read as follows:

   *Murder in the first degree*—Every murder perpetrated by means of poison, lying in wait, or by any other kind of willful, deliberate, malicious, and premeditated killing, or committed in the perpetration of, or attempt to perpetrate, any murder in the first degree, arson, rape, robbery, burglary, or larceny, is murder in the first degree.
   *Tenn.Code Ann.* § 39–2402.

2. Appellants were initially sentenced to death, but the Court of Criminal Appeals of Tennessee reversed that sentence in light of *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and remanded for sentence determination. *Hodges v. State*, 491 S.W.2d 624, 628 (Tenn.Cr.App.1972). The Governor of Tennessee subsequently commuted the sentences to 99 years, and the Court of Criminal Appeals then affirmed the convictions and sentences in all regards. *Hodges v. State*, 491 S.W.2d 624, 628 (Tenn.Cr.App.1972) (on petition to rehear).

   Appellants sought federal habeas corpus relief on five grounds. The District Court considered only one issue, not now on appeal, deciding it adversely to petitioners. On appeal, this Court affirmed on that one issue, remand-ed for an evidentiary hearing on three issues, and held the commutation by the Governor void. (unpublished order filed 2–25–75). The Supreme Court reversed on the sentence commutation issue only, *Rose v. Hodges*, 423 U.S. 19, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975), and that issue is not now on appeal. The District Court then held an evidentiary hearing to consider the remaining three issues, and decided all of them adversely to Appellants. This appeal followed.

3. The facts of the case are summarized in *Hodges v. State*, 491 S.W.2d 624 (Tenn.Cr.App. 1972).

4. The District Court found that Appellants had been advised of their constitutional rights before making the statements, and that the statements were essentially voluntary in nature. These findings are not clearly erroneous. *Cf. Ray v. Rose*, 535 F.2d 966, 973 n. 9 (6th Cir.), cert. den., 429 U.S. 1026, 97 S.Ct. 648, 50 L.Ed.2d 629 (1976).

5. In their statements, each Appellant states that both had, or attempted to have, sexual intercourse with the victim.

who did not take the stand deprived the defendant of his right to confrontation, when that confession implicated the defendant.[6] The petitioner in *Bruton* was unable to cross-examine his codefendant, and there was a "substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt." *Id.* at 126, 88 S.Ct. at 1622.

As to Hodges, the *Bruton* claim is totally without merit. Unlike the petitioner in *Bruton*, Hodges did have an opportunity to cross-examine his codefendant. The confrontation clause as construed in *Bruton* "is violated *only* where the out-of-court hearsay statement is that of a declarant who is unavailable at trial for 'full and effective' cross-examination."[7] *Nelson v. O'Neil*, 402 U.S. 622, 627, 91 S.Ct. 1723, 1726, 29 L.Ed.2d 222 (1971) (emphasis in original). *See California v. Green*, 399 U.S. 149, 158–64, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *United States v. Hendrickson*, 542 F.2d 21, 22 (6th Cir. 1976); *United States v. Sims*, 430 F.2d 1089, 1091 (6th Cir. 1970).

The situation is quite different as to Lewis, since his codefendant, Hodges, never took the stand. Mere inability to cross-examine, of course, does not automatically make out a *Bruton* claim. Where the extrajudicial statement does not clearly implicate defendants other than the declarant, then the confrontation clause may not be offended by the unavailability of cross-examination. In this regard, it is generally recognized that the *Bruton* problem can be

avoided in some cases by eliminating from the extrajudicial statement all references to defendants other than the declarant, and properly cautioning the jury against use of the statement in determining the guilt of those defendants. *See, e. g., United States v. Wingate*, 520 F.2d 309 (2d Cir.), *cert. den.*, 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976); *United States v. Hicks*, 524 F.2d 1001 (5th Cir. 1975); *United States v. Alvarez*, 519 F.2d 1052 (3d Cir.), *cert. den.*, 423 U.S. 914, 96 S.Ct. 221, 46 L.Ed.2d 143 (1975); *United States v. English*, 501 F.2d 1254 (7th Cir.), *cert. den.*, 419 U.S. 1114, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975). Such redaction of codefendant statements can obviate the need to order separate trials.

We followed this approach in *United States v. Dady*, 536 F.2d 675 (6th Cir. 1976). There we held admissible an extrajudicial confession by a nontestifying codefendant, where all references to other defendants were deleted. The redacted confession, standing alone, in no way implicated the other defendants, and did not suggest the existence of accomplices. Unlike the statement involved in *Bruton*, the confession was not "powerfully incriminating" (391 U.S. at 135, 88 S.Ct. 1620) as against the two non-confessing defendants. Any inference of guilt on their part arose from independent evidence of their involvement in the crime, and not from their codefendant's confession. *Cf. United States v. Hendrickson*, 542 F.2d 21, 22–23 (6th Cir. 1976).

The Hodges statement admitted by the trial court in this case is of a different order

---

**6.** The *Bruton* rule was held applicable to state court proceedings in *Roberts v. Russell*, 392 U.S. 293, 294, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968).

**7.** Hodges maintains that his *Bruton* rights were violated because he was unable to take the stand after Lewis testified in order to rebut Lewis' testimony. The order of trial called for presentation of Hodges' defense before Lewis', and the trial court indicated that Hodges would not be allowed to testify after Lewis if he (Hodges) did not first testify in his own defense. Hodges never objected to this procedure at trial, and never requested an opportunity to testify after Lewis. Indeed, he stated more than once that he did not want to take

the stand. His attorney likewise stated that he thought it would be "best for him" not to testify.

Under these circumstances any claim as to Hodges' "inability" to rebut Lewis' testimony is simply not before this court. The trial court never expressly excluded rebuttal testimony in response to an offer of such testimony by Hodges. This court will not engage in speculation as to the constitutional deprivations that a habeas petitioner might have suffered had he offered certain testimony, and had the trial court decided to exclude it. *Cf. Hochstadt v. Worcester Foundation*, 545 F.2d 222, 226 n. 4 (1st Cir. 1976); *United States v. Muncy*, 526 F.2d 1261, 1263 (5th Cir. 1976).

than that involved in *Dady*. The statement clearly and unequivocally implicates another party in the murder.[8] Although the other party is referred to as "blank" in the redacted statement, the circumstances of the case and other evidence admitted virtually compel the inference that "blank" is Lewis. Six witnesses testified that on the night of the murder they saw Hodges and Lewis swing the woman by her arms and feet and throw her onto the steps of the church. In his own statement, Lewis admitted assisting Hodges in dragging the woman into the church and raping her. Lewis also admitted being present in the church at the time she was beaten. Under these circumstances, Hodges' reference to "blank" as the person who helped him drag the woman into the church and as the one who subsequently raped and killed her "made it as clear as pointing and shouting that the person referred to" was Lewis. *Harrington v. California*, 395 U.S. 250, 253, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969). *See United States v. Gonzalez*, 555 F.2d 308, 316–17 (2d Cir. 1977).

█ Admittedly, the independent evidence against Lewis was strong. But a trial court cannot decide on the admissibility of a statement under *Bruton* on the basis of the strength of the state's case. Rather, the court must decide whether the statement incriminates the defendant against whom it is inadmissible in such a way as to create a "substantial risk" that the jury will look to the statement in deciding on that defendant's guilt. Such an assessment may require consideration of other evidence in order to determine whether mere deletion of the defendant's name will be effective in making the statement non-incriminating as to him. But consideration of the weight of independent evidence is both improper and unnecessary to determination of the *Bruton* issue at the trial court level.[9] *See United States v. DiGilio*, 538 F.2d 972, 982 (3d Cir. 1976).

█ We likewise reject the notion, suggested by the District Court, that Hodges' and Lewis' statements might both be admissible because they "interlock" or agree on important points of the crime. Although this view has been adopted by some courts (*see, e. g., United States ex rel. Stanbridge v. Zelker*, 514 F.2d 45, 48–49 (2d Cir. 1975)), we do not think it is consistent with the *Bruton* rule. *See United States v. DiGilio*, 538 F.2d 972, 982 (3d Cir. 1976). The fact that codefendant statements, taken before trial, may agree on certain points does

8. The pertinent passage of Hodges' statement was read to the jury as follows:

He started pulling her on around on the street, Turley, to the church, well, she was so heavy and there was some mud, I caught hold of her arm and helped him put her in the church. I was so intoxicated by my drinking that I actually didn't know what I was doing when I was doing that. Then, Ah. Blank drags her up on pulpit of the church, then I went to the front door and was watching and after that he gets through with whatever he was doing with her, he was having intercourse with her, he brings the woman back down in the floor, then it was something come up, anyway, I was going to try to have intercourse with the woman but I didn't have none, well I tried, but I got up off her and then blank had another intercourse with the woman. Then the woman looked like she was coming to and when she come to that's when blank hit her again and knocked her out again. Then blank was using a bottle on her in her privates and then, I actually don't know, but I was watching when I heard a lick, he had hit her again, I didn't her say nothing, and I said, "Goddamn, I believe you

done killed this woman, cause she don't say nothing." Then after that we left and walked away then we decided we better go back and check on the woman and found out that she was actually dead.

9. The decision on how to "*Brutonize*" a statement, if necessary, must ordinarily be made early in the trial, when the judge is not in an ideal position to assess the strength of the government's case. A judge can decide at the outset, however, whether a codefendant statement is likely to incriminate other defendants in such a way as to create a substantial *risk* that the jury will consider it in deciding on the guilt of those defendants. If the incriminating references ultimately add little to the government's case, then their exclusion does no harm, and the confrontation rights of the defendants are preserved. We do not read *Bruton* as guaranteeing a right of confrontation only as against testimony that proves to be vital to the prosecution's case. *Contra, United States v. Gonzalez*, 555 F.2d 308, 316–17 (2d Cir. 1977); *United States v. Wingate*, 520 F.2d 309, 313–14 (2d Cir. 1975).

not necessarily vitiate the need for cross-examination. In this case, Appellant Lewis took the position at trial that his statement was coercively obtained. He repudiated the statement in his testimony, claiming that he was not near the church on the night of the murder. Although this testimony was seriously lacking in credibility, it did contradict all of those important points upon which Lewis' and Hodges' extrajudicial statements agreed. Cross-examination of Hodges was thus arguably of importance under Lewis' theory of defense. Certainly the "jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place" on Hodges' statement. *Davis v. Alaska*, 415 U.S. 308, 317, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974).

Accordingly, we hold that admission of Hodges' statement, even as redacted, violated the *Bruton* rule as to Lewis.[10] Having so ruled, we face the question of whether the *Bruton* error was harmless beyond a reasonable doubt. Even though Hodges' statement as admitted created a substantial risk of prejudice to Lewis, the actual impact on the jury may have been insignificant in comparison with the properly admitted evidence suggesting guilt. *Schneble v. Florida*, 405 U.S. 427, 430, 432, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). *See Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). We must decide whether the "minds of an average jury" would have found the State's case against Lewis "significantly less persuasive" had the incriminating portion of Hodges' statement been excluded. *Schneble v. Florida*, 405 U.S. at 432, 92 S.Ct. 1056 (1972).

As already noted, the evidence that Hodges and Lewis jointly dragged the woman into the church was substantial. Numerous witnesses saw the two together on the night of the murder, and several saw them with the woman on the church steps. In their statements, both defendants admitted dragging the woman into the church and subsequently raping her. Human blood was found on undershorts which Lewis stated he had been wearing at the time of the crime. Blood was also found on undershorts discovered in Hodges' apartment. The decedent was found almost entirely disrobed and a wine bottle had been inserted in her vagina. According to the medical examiner, death resulted from multiple injuries, the most lethal of which were bruises to the brain. Based on this evidence, we are confident that any reasonable jury would readily conclude that both defendants forcibly took the woman into the church, that both raped her there, and that she was killed in the process.

Of course, this evidence does not show *which* defendant delivered the fatal blows. In their statements, each defendant accuses the other of committing the murder, and Lewis claims to have attempted to dissuade Hodges from beating the woman. Under Tennessee law, however, an aider or abettor in a crime is responsible for the acts of his accomplice in pursuit of the criminal purpose. *See* Tenn.Code Ann. § 39–109. The jury was instructed by the trial court that "a killing by one of a party, in the pursuit of an unlawful purpose involving the use of violence in which both are engaged, is the act of both who engaged in the unlawful purpose."[11] Based on this instruction, and evidence independent of the improperly admitted statement, we think that the average jury would conclude that Hodges and Lewis were both guilty of the murder, re-

---

**10.** Of course, this does not mean that the entire statement had to be excluded. Certainly, admission of those parts referring only to Hodges' involvement in the crime, without any reference to an accomplice, would have been proper. In *United States v. Dady*, 536 F.2d 675 (6th Cir. 1976), this was accomplished by allowing the witness who heard the statement to paraphrase it in such a manner as to avoid any

references that might directly implicate other defendants. *Id.* at 676–71 n. 1.

**11.** The defendants did not object to this instruction, and we believe it to be a proper characterization of then-existing Tennessee law. *See Freshwater v. State*, 2 Tenn.Cr.App. 314, 453 S.W.2d 446, 450–51 (1969), *cert. den.*, 400 U.S. 840, 91 S.Ct. 80, 27 L.Ed.2d 74 (1970).

gardless of which actually dealt the fatal blows.[12] The error in admitting the incriminating portions of Hodges' statement as to Lewis was therefore harmless beyond a reasonable doubt. *See United States v. Dority*, 487 F.2d 846, 849 (6th Cir. 1973); *United States v. Levinson*, 405 F.2d 971, 988 (6th Cir. 1968), *cert. den.*, 395 U.S. 958, 89 S.Ct. 2097, 23 L.Ed.2d 744, *reh. den.*, 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969).

Hodges maintains that the District Court erred in denying a motion by him to amend the habeas petition so as to include a claim of ineffective assistance of counsel. The motion to amend was made on the day of the evidentiary hearing on the petition, over three years after the petition had been initially filed.

Amendment of a petition for habeas corpus is governed by the "rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Under Federal Rule of Civil Procedure 15, a party may amend his pleading "only by leave of court or by written consent of the adverse party" once responsive pleadings have been filed.[13] The grant or denial of a motion for leave to amend under Rule 15 is within the sound discretion of the District Court, and will be reversed only for an abuse of discretion. *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 970 (6th Cir. 1973), *cert. den.*, 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974). We see no abuse of discretion here. The motion to amend was filed at a very late stage of the proceedings, after a pre-hearing conference had already been held. The District Court was not obligated to disrupt the entire process by honoring a last minute request to expand a petition filed several years before. Denial of the motion was without prejudice, and thus does not preclude subsequent attempts to obtain relief on the same grounds.

We have considered all of the other claims raised by petitioners and find them to be without merit.

The judgment of the District Court is affirmed.

---

12. At the time of Appellants' convictions, Tennessee's felony-murder statute (*see* note 1, *supra*) did not require a showing of intention to kill. Intent to commit the felony (here, rape) was by implication transferred to the homicide. *See Farmer v. State*, 201 Tenn. 107, 296 S.W.2d 879, 883 (1956).

13. The original petition was filed in October of 1973. The State of Tennessee filed an answer in December 1973.