**Ewather HALL, Appellant,**

v.

**Charles L. WOLFF, Jr., Warden, Nebraska Penal and Correctional Complex, Appellee.**

No. 75–1894.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1976.

Decided July 26, 1976.

---

Alan Saltzman, Prisoners Legal Services Project, Lincoln, Neb., for appellant.

Paul W. Snyder, Asst. Atty. Gen., Lincoln, Neb., for appellee; Paul L. Douglas, Atty. Gen., Lincoln, Neb., on brief.

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

Before BRIGHT and WEBSTER, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

This appeal is taken from an order of the District Court for the District of Nebraska, Judge Schatz, denying, after hearing, appellant's third petition for writ of habeas corpus. We affirm.

The case grows out of the murder of an Omaha cab driver in 1961. He had been beaten with a hammer, then robbed and shot. The petitioner and a codefendant, Curtis Rowland, were tried jointly in a Nebraska state court for murder in the first degree while in the perpetration of a robbery. The confessions[1] of each were introduced into evidence, neither defendant taking the stand. The confessions were detailed and each defendant implicated the other in the commission of the crime. Both defendants were convicted and sentenced to death. Both also moved for a new trial. Rowland's motion was granted on the ground that an illegal promise induced his confession. Hall's motion was denied, and although his conviction was affirmed by the Supreme Court of Nebraska, State v. Hall, 176 Neb. 295, 125 N.W.2d 918 (1964), his sentence was reduced to life imprisonment.

Petitioner's applications for post-conviction relief began in 1967 in the District Court for Douglas County, Nebraska. The denial of his petitioned relief by the District Court was affirmed by the Nebraska Supreme Court in State v. Hall, 185 Neb. 653, 178 N.W.2d 268 (1970).

Habeas corpus relief was then sought in the United States District Court for the District of Nebraska. It was there asserted that at the joint trial his federal constitutional rights had been invaded by 1) the admission of the confession of his codefendant Rowland, which implicated him and 2) the admission of both of his own confessions on the ground that they were not voluntarily made. Judge Denney, after evidentiary hearing, dismissed the application on the

---

1. Hall had confessed twice, on December 24 and on December 26, 1961.

merits. *Hall v. Wolff*, Civil No. 71–L–216 (April 13, 1972).[2]

■ There is no doubt that the *Bruton* rule was violated. However, it is well established that such violation does not mandate automatic reversal, without regard to the weight of the evidence.

The mere finding of a violation of the *Bruton* rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.

*Schneble v. Florida*, 405 U.S. 427, 430, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 240 (1972).[3]

In the instant case Hall's two confessions were "minutely detailed and completely consistent with the objective evidence."[4] It was established by petitioner's confessions that he had known codefendant Rowland for about two years, that on the evening in question they met at Rowland's house and discussed perpetrating a robbery. They then proceeded to a telephone booth at Twenty-fourth and Cuming Streets in the City of Omaha, from which booth Rowland called a cab. According to the first confession, after entering the cab, Rowland handed a hammer to the petitioner, put a gun in the cab driver's back, and told petitioner to hit the driver with the hammer. He did so, twice. The driver, who was not knocked out, gave petitioner and Rowland his money, almost four dollars, and began begging. Then Rowland shot the driver. According to the second confession, Rowland used the hammer, and petitioner shot the driver. This was the only significant difference in the two confessions. Both of petitioner's confessions, as well as that of Rowland, agreed that the events described took place in their joint presence and with the participation of both. Rowland's confession corresponded substantially, in all material respects, with petitioner's second confession. Both Hall's confessions and Rowland's established all material elements of the crime charged, and each of them established the guilt of both defendants. As to who used which weapon, hammer or revolver, such fact is of no material consequence in this context. The trial court, we note, warned and instructed the jury that Rowland's confession was not to be considered in establishing the guilt of the petitioner before us.[5] In addition to the above

2. Judge Denney held in substance, that although the rule of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), had been violated, "the court is not persuaded that the introduction of [co-defendant] Rowland's confession presented the substantial risk of prejudice condemned in *Bruton v. United States, supra*, since Hall's own confessions were before the jury." (Citing *United States ex. rel. Cantanzaro v. Mancusi*, 404 F.2d 296, 300 (2d Cir. 1968), in which it was held that a violation of the *Bruton* rule did not entitle petitioner to a writ of habeas corpus because the petitioner's confession "interlock[ed] with and support[ed] that of his co-defendant.") Memorandum Opinion at 2.

On the issue of voluntariness Judge Denney held that "[i]t does not appear to the Court that Hall's will was so overborne that the confessions were not his free and voluntary acts." *Id.* at 4.

The application for the writ was accordingly denied.

The denial was followed by a second petition making allegations respecting the running of the time for appeal of the first denial. In an order dated May 29, 1973, the second petition was dismissed without evidentiary hearing. *Hall v. Wolff*, Civil No. 72–0–392 (D.Neb.1973).

The present petition was permitted on the basis that certain testimonial evidence was not presented at the previous evidentiary hearing. See *Sanders v. United States*, 373 U.S. 1, 15–17, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

3. See also *Brown v. United States*, 411 U.S. 223, 231, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Davis v. Sigler*, 415 F.2d 1159, 1163 (8th Cir. 1969); *United States ex rel. Cantanzaro v. Mancusi*, 404 F.2d 296, 300 (2d Cir. 1968).

4. *Schneble, supra*, 405 U.S. at 430, 92 S.Ct. at 1059.

5. At the time of its introduction into evidence, the jury was warned that:

Any and all testimony as to statements of the Defendant Curtis Eugene Rowland made at a place other than the witness stand in this

there was corroborating objective evidence, a portion of which placed petitioner herein at the scene of the crime.

The petitioner's answer to all of this is a series of speculations concerning various views the jury might have taken on the evidence before it, including Rowland's confession. Thus petitioner argues that the jury might have concluded that petitioner's confessions were involuntary and relied solely upon Rowland's for their determination of guilt. We do not overturn a properly instructed jury's verdict on speculative grounds, but evaluate their verdict upon the evidence submitted to them. The argument presented somewhat parallels that made in *Harrington, supra,* as to which the Court held:

> It is argued that we must reverse if we can imagine a single juror whose mind might have been made up because of Cooper's and Bosby's confessions and who otherwise would have remained in doubt and unconvinced. We of course do not know the jurors who sat. Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the two confessions on the minds of an average jury.

395 U.S. at 254, 89 S.Ct. at 1728.

Particularly pertinent to the argument made is the statement in *Schneble, supra,* that:

> Judicious application of the harmless-error rule does not require that we indulge assumptions of irrational jury behavior when a perfectly rational explanation for the jury's verdict, completely consistent with the judge's instructions, stares us in the face. See *Rogers v. Missouri Pacific*

*R. Co.,* 352 U.S. 500, 504–505, 77 S.Ct. 443, 447, 1 L.Ed.2d 493 (1957).

405 U.S. at 431–32, 92 S.Ct. at 1059.

So tested there is no constitutional infirmity before us. Our reading of the entire record satisfies us that no miscarriage of justice resulted from *Bruton's* violation. Hall's own confessions, detailed as they were, corroborated by other objective evidence, establish overwhelming evidence of his guilt.

■ Petitioner also charges that his two confessions were involuntarily made. He points out that at the time he was only 19 years of age and of a low order of intelligence. He recapitulates his charges as

> the repeated questioning and abusive conduct of the accused by his custodians (citing cases), failure to warn of his right to silence or counsel at the proper time (citing case), refusal to permit a visit by a close relation (citing case), and evidence of physical abuse or threats thereof by the police (citing cases).[6]

The appellee, on the other hand, although apparently conceding Hall's age and low order of intelligence, lists as "crucial factors," "that Hall was advised of his constitutional rights before both confessions, that [he] answered affirmatively when questioned as to whether he wanted to make a statement and whether it was completely voluntary; that [he] had been detained for only a relatively short period before he made his first formal statement admitting the crime;" and, denying the abuse charged, "that neither of the two court reporters who transcribed the confessions noted any signs of threats, violence, or

---

trial, will, if found by you to be voluntary in accordance with the instructions of the Court to be given to you at the conclusion of the trial, be considered by you together with the other evidence in accordance with the instructions of the Court, solely in the case in which Curtis Eugene Rowland is Defendant. They are not to be considered as proof in connection with the guilt or innocence of the Defendant Ewather Hall or in any other connection in his case for the reason that as to

Defendant Ewather Hall such statements are nothing more than hearsay evidence.

We note also, that the trial judge gave the jury a similar warning at the conclusion of the reading of Rowland's statement. Additionally, the trial judge in his instructions to the jury at the close of the case, again admonished the jurors not to consider the out-of-court statements of one codefendant in the case against the other codefendant.

**6.** Brief for Appellant at 31.

physical abuse; and that Hall's trial counsel who testified at the evidentiary hearing held before Judge Denney stated that the theory of counsel at the time of the state court trial was that the statements were voluntary." [7]

The Hall trial took place several years prior to the *Escobedo* [8] and *Miranda* [9] opinions, which are not applied retroactively. [10] We are thus remitted to a determination of whether or not the will of the defendant was so overcome that the confessions were not his free and voluntary acts, which determination is to be made in the light of the totality of the circumstances. [11] Among the factors to be considered are:

> [B]oth the characteristics of the accused and the details of the interrogation. Some of the factors taken into account have included the youth of the accused, *e. g., Haley v. Ohio,* 332 U.S. 596, [68 S.Ct. 302, 92 L.Ed. 224]; his lack of education, *e. g., Payne v. Arkansas,* 356 U.S. 560, [78 S.Ct. 844, 2 L.Ed.2d 975]; or his low intelligence, *e. g., Fikes v. Alabama,* 352 U.S. 191, [77 S.Ct. 281, 1 L.Ed.2d 246]; the lack of any advice to the accused of his constitutional rights, *e. g., Davis v.*

---

**7.** Brief for Appellee at 17–18.

The court reporter who took Hall's first statement on the evening of December 24th, Jack M. Fitch, testified at Hall's state court trial as follows:

Q. Previous to your actual transcribing of the notes, the questions and answers of this statement which is marked here as Exhibit 24, were there any promises made to Mr. Ewather Hall in connection with making this statement?
A. No, sir, there were not.
Q. Were there any threats by anyone present as you have recorded it, against Mr. Ewather Hall in any manner while you were present?
A. No, sir, there were not.
Q. Was there any physical abuse rendered upon Mr. Ewather Hall before this statement was taken or during the entire statement that you recorded?
A. No, sir, there was not.
Q. Was the Defendant Ewather Hall advised of his Constitutional rights concerning the making of this statement?
A. It would probably be best that I check the transcript on that. I recall, it is my memory that he was so informed. I would prefer to look at the statement or check my notes.
Q. To refresh your recollection, would you look at Exhibit 24 before you answer that question?
A. Yes, sir, he was told of his Constitutional guarantees.
 * * * * * *
Q. Mr. Fitch, did you observe any wounds or marks of violence upon Ewather Hall of any kind?
A. No, sir.
Q. Was the Defendant Ewather Hall in handcuffs?
A. Not to my recollection. I have no recollection that he was.
Q. Was there any kind of restraint on him at all?
A. No, sir.

Hall's second statement, two days later, was reported by E. G. Woodbury, who testified at Hall's trial as follows:
Q. Now, Mr. Woodbury, immediately prior or during the taking of the statement in your presence, were there any threats made by anyone toward or to Defendant Hall to induce him to make any statement?
A. There were not.
Q. Were there any promises immediately before or during the taking of the statement, made to Ewather Hall inducing him to make such a statement?
A. No, sir.
Q. Immediately before or during the taking of the statement was the Defendant in any way physically abused?
A. No, sir.
Q. Did you observe whether or not the Defendant was in any leg irons?
A. He was not.
Q. Was he in any handcuffs?
A. No, sir.
Q. And I will ask you, Mr. Woodbury, if you recall, was the Defendant Ewather Hall at that time of that taking of that statement advised that he did not have to answer any questions?
A. Yes, he was.
Q. And I will ask you also, Mr. Woodbury, if before or during the taking of that entire statement if the Defendant Ewather Hall was threatened with any physical abuse of any kind whatsoever?
A. No, he was not.

**8.** *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

**9.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**10.** *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

**11.** *Procunier v. Atchley,* 400 U.S. 446, 453, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971).

*North Carolina,* 384 U.S. 737, [86 S.Ct. 1761, 16 L.Ed.2d 895]; the length of detention, *e. g., Chambers v. Florida, supra,* [309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716]; the repeated and prolonged nature of the questioning, *e. g., Ashcraft v. Tennessee,* 322 U.S. 143, [64 S.Ct. 921, 88 L.Ed. 1192]; and the use of physical punishment such as the deprivation of food or sleep, *e. g., Reck v. Pate,* 367 U.S. 433, [81 S.Ct. 1541, 6 L.Ed.2d 948]. In all of these cases, the Court determined the factual circumstances surrounding the confession, assessed the psychological impact on the accused, and evaluated the legal significance of how the accused reacted. *Culombe v. Connecticut, supra* [367 U.S. 568, 81 S.Ct. 1860, at 1879, 6 L.Ed.2d 1037] at 603.

*Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973) (footnote omitted).

We do not take this listing to be all-inclusive. In the case before us one of the unique factors to be considered in the totality of the circumstances is that at Hall's first habeas corpus evidentiary hearing, his trial counsel stated to Judge Denney that the theory of counsel at the time of trial was that Hall's statements were voluntary. With respect thereto Judge Denney commented, "[i]t is inconceivable that if there had been even a shadow of doubt as to their voluntariness counsel would not have so argued to the Court at the time they were offered into evidence." [12] We are likewise so persuaded.

Certain of the factors relied upon by Hall, namely, low intelligence, denial of the right to counsel, and failure to advise of the right to remain silent, were also asserted in the *Procunier* case, *supra.* As to them, the Court held:

Of these six assertedly coercive factors, three went only to the weight to be given

other evidence of actual coercion. Low intelligence, denial of the right to counsel, and failure to advise of the right to remain silent were not in themselves coercive. Rather they were relevant only in establishing a setting in which actual coercion might have been exerted to overcome the will of the suspect.

*Procunier, supra,* 400 U.S. at 453–54, 91 S.Ct. at 489.

■ Petitioner's charges of physical abuse go to the exercise of actual coercion. The verbal testimony with respect thereto came from a relative of Hall, Mrs. Beatrice Hadley; a friend of petitioner, one Andrew Jackson; and petitioner, himself.[13] Mrs. Hadley's testimony was at variance with certain portions of her affidavit and she was seriously impeached in her identification testimony. Mr. Jackson had testified at the joint trial that codefendant Rowland had been physically abused but at that trial nothing had been elicited from him as to petitioner Hall's now-alleged abuse. After hearing in court the testimony of Hall and Mrs. Hadley before Judge Schatz, Jackson volunteered to testify for petitioner. It was his testimony that he saw Hall with bruises on his face on Christmas morning of 1961.

The testimony of these witnesses, brought forward some 13 years after the events described, is singularly unimpressive to us. With respect to the alleged abuse, Judge Schatz held that "[t]he question of whether Hall was physically abused goes to the question of credibility and this Court finds unequivocally that Hall's confession was not induced by physical abuse." Memorandum Opinion at 6. We find no clear error in his ruling. *Leasure v. Lockhart,* 509 F.2d 23, 25 (8th Cir. 1975).

We are satisfied in the light of the totality of the circumstances that petitioner's

**12.** *Hall v. Wolff,* Civil No. 71–L–216, *supra,* at 3.

**13.** In addition to the Hadley, Jackson, and Hall testimony we have considered the entire record before us, consisting of the state trial court proceedings, the transcript from the first habe-

as corpus case (Civil No. 71–6–216), the transcript from the District Court hearing held by Judge Schatz, and the affidavits of appellant, his cousin, Beatrice Hadley, and one of Hall's prior attorneys, Mr. Richard Hansen.

confessions were not the result of coercion and that he suffered no violation of his constitutional rights in the admission of his codefendant's confession in view of the overwhelming evidence against him.

Affirmed.