**Robert Steven WINFREY, Appellee,**

v.

**Donald WYRICK, Warden, Missouri State Penitentiary; and State of Iowa, Appellants.**

**No. 86–2451.**

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1987.

Decided Dec. 30, 1987.

Rehearing and Rehearing En Banc Denied Feb. 17, 1988.

Thomas D. McGrane, Asst. Atty. Gen., Des Moines, Iowa, for appellants.

Gary B. Garrison, Des Moines, Iowa, for appellee.

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and ROSENN,[*] Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Robert Winfrey was convicted of murder in Iowa state court. At his trial the state introduced confessions Winfrey made to two police officers. Winfrey moved to suppress the statements on the grounds that he made them involuntarily, but the state court denied his motion. Winfrey filed a habeas corpus petition under 28 U.S.C. § 2254 (1982), renewing his assertions that the confessions were involuntary. The district court agreed with Winfrey and granted his petition. Winfrey's custodian and the State of Iowa brought this appeal, which requires us to determine, first, what facts must be deemed to have been found by the state and district courts, respectively; and second, whether on the basis of these facts, Winfrey's confession was involuntary as a matter of law. We reverse.

Winfrey was arrested on April 6, 1972 in connection with a killing that occurred in Des Moines in March, 1972. While Winfrey was in jail, lawyers visited him on two occasions. Each lawyer told him not to talk with anyone about his case, and the second lawyer told him that if he did discuss the case with anyone, anything he said could be used against him.

On Saturday April 8, Winfrey began talking with one of his jailers, Alfred Baumann. Baumann and Winfrey had become acquainted during earlier occasions when Winfrey had been in jail. Baumann and Winfrey talked for about an hour and a half about topics other than Winfrey's case. Baumann told Winfrey that if he wanted to talk more to let him know.

The facts are disputed as to whether it was Baumann or Winfrey who initiated a conversation that occurred the next day, but the talk turned to the facts of Winfrey's case. At that point, Baumann advised Winfrey of his Miranda[1] rights and asked whether Winfrey wanted his mother or lawyer to be present before the discussion went any further. Winfrey rejected the idea of having his mother or attorney present, saying he had lied to his mother and his lawyer and therefore he did not want them to be there for the discussion. Winfrey asked to see his co-defendant, who was brought in to see him. Winfrey then confessed to Baumann that Winfrey had shot the victim while attempting to rob a service station.

Baumann called Police Officer Steiner and asked him to come over to talk to Winfrey. Steiner refused to talk to Winfrey unless Winfrey personally requested him to; Winfrey then talked to Steiner on the telephone and asked him to come to the jail to talk to him.

Steiner arrived and advised Winfrey and his co-defendant of their Miranda rights. Winfrey and the co-defendant agreed to talk, but refused to sign anything or to allow Steiner to tape-record the conversation. Winfrey then made the same confession to Steiner as he had made to Baumann.

In the state murder case, Winfrey moved to suppress Baumann and Steiner's testimony about the confessions on the grounds that the statements were involuntary. The court conducted a full hearing at which Winfrey testified that he had had numerous experiences with the criminal justice system and had been to reform school four different times; that Officer Baumann had done him favors before the 1972 encounter and that Winfrey had trusted Baumann; that Baumann initiated the April 9 conversation; that Baumann and Steiner persuaded Winfrey to talk by telling him they could get him off on manslaughter; that Baumann told Winfrey their conversation would be confidential; that Baumann did not advise Winfrey of his rights; and that Baumann and Steiner told Winfrey as long as he did not give a written statement, his words could not be used against him.

---

* The HONORABLE MAX ROSENN, Senior Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

On the other hand, Baumann and Steiner testified that Winfrey initiated the April 9 conversations; that each advised him of his Miranda rights before allowing him to make any incriminating statements and that Winfrey indicated he understood his rights; that Steiner told Winfrey that Steiner and Baumann would have to testify in court as to Winfrey's statements; and that they told him he was charged with murder and declined to offer an opinion on whether the charge would be reduced if the killing were accidental.

Further, a psychiatrist, Dr. Loeffelholz, testified that he had examined Winfrey and that Winfrey was in the "dull normal" range of intelligence, with an IQ of 85 to 90, whereas the normal range was 90 to 105. Loeffelholz also testified that though Winfrey was 18 at the time of the examination, his mental age was about 14 or 15 and that Winfrey was at the 5th or 6th grade level of academic achievement. Loeffelholz was questioned at length about Winfrey's ability to understand and knowingly waive his *Miranda* rights. In response to defense counsel's hypothetical question, Loeffelholz indicated that it was doubtful Winfrey would have understood the full consequences of waiving his rights. He also said initially that Winfrey "apparently believed" that "as long as he didn't sign something, it wouldn't be used." However, upon more specific questioning, Loeffelholz clarified that Winfrey was able to understand the fact that his statements could be used against him in court; Loeffelholz's reservation was with regard to whether Winfrey understood the "extent and the full consequences of the results" of waiving his rights, apparently referring to considerations of strategy and punishment.[2] Loeffelholz answered the trial court's questioning:

BY THE COURT:

Q: There was some mention along the line that possibly the defendant didn't understand that the statement could be used against him unless it was in writing and unless he signed it. Now, as the Court understands it now it would be your thought that there would be no reason why the defendant couldn't understand the bald statement that anything you say, in other words, anything you say orally, could be used against you?

A: No, there isn't any reason at all why he couldn't understand that. If I gave that impression that isn't really what I meant to say. He understands the spoken word very well.

The state trial court denied Winfrey's motion, stating in its order:

1. Defendant, Robert Steven Winfrey, was fully warned and advised of his constitutional rights prior to his making the alleged statements to witnesses Steiner and Baumann, which are the subject of defendant's Motion to Suppress.

2. Defendant understood the nature and extent of his said rights, including the consequences of his making said alleged statements.

Baumann and Steiner's testimony regarding the confessions was admitted at trial, and Winfrey was convicted of felony murder.

Winfrey appealed to the Supreme Court of Iowa, which affirmed the trial court, specifically finding that the officers did not assure Winfrey he would receive a lighter sentence if he talked and that Winfrey rejected the officer's suggestions that his parents or an attorney be present when he talked to the officers. *State v. Winfrey*, 221 N.W.2d 269, 273 (Iowa 1974).

Winfrey filed a habeas corpus petition under section 2254, renewing his objection to the confessions. The district court granted his petition. The court conceded

---

**2.** The Supreme Court "has never embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness." *Oregon v. Elstad,* 470 U.S. 298, 316, 105 S.Ct. 1285, 1297, 84 L.Ed.2d 222 (1985). Loeffelholz's testimony affirmed that Winfrey was able to understand the basic "constitutional privilege, including the critical advice that whatever he [chose] to say [might] be used as evidence against him." *Colorado v. Spring,* 479 U.S. ——, 107 S.Ct. 851, 858, 93 L.Ed.2d 954 (1987).

that it was bound under section 2254 [3] to accord a presumption of correctness to the facts found by the Iowa Supreme Court, since the reasons for abrogating that presumption under section 2254 did not exist in this case. However, the court stated that even taking the facts as found by the Iowa Supreme Court, Winfrey's confessions were involuntary as a matter of law. In reaching its conclusion, the district court relied primarily on its own finding that Winfrey did not understand his *Miranda* rights and that Winfrey believed that so long as he did not sign anything, he would be protected. The court emphasized that Winfrey was seventeen years old at the time of the confession, with a "mental age of only fourteen." The court found that Winfrey's mother had told Baumann not to talk to Winfrey unless she or an attorney were present. The court also found that Baumann had a " 'special relationship' " with Winfrey and that Steiner's testimony was that a signed statement would be "no good" unless Winfrey's mother and attorney were present. Finally, the court emphasized that neither Winfrey's mother nor his attorney were present for the conversation with the police, though this would have been required by Iowa Code § 232.11 (1987), which was passed several years after the events in question.

Although the district court did not dispute that Winfrey had had prior experience with the law, the court concluded that Winfrey's experience was not particularly probative of voluntariness, since Loeffelholz testified that possible conversations with other inmates at reform school about the *Miranda* case may have as easily contributed to misunderstanding of the holding of that case as to understanding of it.

This court faces two tasks in deciding this case. First, we must ascertain what facts were found by the state trial and appellate courts and are thus presumed correct, 28 U.S.C. § 2254; *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981), and what facts (consistent with the state courts' findings) were found by the district court and are thus binding on us, unless clearly erroneous. *See Warden v. Wyrick*, 770 F.2d 112, 115 (8th Cir.), *cert. denied*, 474 U.S. 1035, 106 S.Ct. 600, 88 L.Ed.2d 579 (1985). Second,

---

3. Section 2254(d) provides:

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

taking the state court findings, consistent district court findings and undisputed facts, we must determine as a question of law whether those facts warrant the conclusion that Winfrey's confession was voluntary or coerced. *See Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985); *United States v. Wilson,* 787 F.2d 375, 380 (8th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 197, 93 L.Ed.2d 129 (1986). We must determine the voluntariness of the confession by ascertaining "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton,* 474 U.S. at 112, 106 S.Ct. at 451. We must examine "the tactics used by the police, the details of the interrogation, and any characteristics of the accused that might cause his will easily to be overborne." *United States v. Rohrbach,* 813 F.2d 142, 144 (8th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 2490, 96 L.Ed.2d 381 (1987).

First, the state courts found several important facts. The trial court found that Winfrey was "fully warned and advised of his constitutional rights" before making either confession, and that he "understood the nature and extent of his said rights, including the consequences of his making said alleged statements." The Iowa Supreme Court added its findings that the officers made no assurances of leniency and that Winfrey rejected their suggestions that his mother or attorney be present.

The district court's finding that Winfrey did not understand his *Miranda* rights directly contradicts the Iowa trial court's finding that he did understand them. In examining the testimony of Dr. Loeffelholz the district court chose to accept those statements most supportive of the conclusions it reached and overlooked the full import of Dr. Loeffelholz's testimony, which was that Winfrey understood that he could choose not to talk and that if he did talk, his statements could be used against him. While Loeffelholz's testimony was somewhat ambiguous at the outset, by the conclusion of his examination he stated unequivocally in response to the trial court's

questioning that Winfrey had the intelligence to understand that his statement could be used against him in court. Loeffelholz's testimony as a whole supports the state court's determination that Winfrey understood his rights.

■ Voluntariness of a confession is a legal inquiry "meriting independent consideration in a federal habeas corpus proceeding," *Miller v. Fenton,* 474 U.S. at 116, 106 S.Ct. at 453, *see United States v. Wilson,* 797 F.2d at 380, but whether Winfrey understood his rights is a subsidiary issue of fact. *Ahmad v. Redman,* 782 F.2d 409, 413 (3d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 119, 93 L.Ed.2d 66 (1986). Thus, the state court finding that Winfrey understood his rights is entitled to a presumption of correctness. Winfrey has not borne the "heavy burden of overcoming the presumption," *Cabana v. Bullock,* 474 U.S. 376, 106 S.Ct. 689, 698, 88 L.Ed.2d 704 (1986), and therefore the district court's disregard of the state court finding violates the command of section 2254 and overlooks that section's restrictions on the role of federal habeas courts in review of state court decisions. *See generally Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722.

The district court found other facts that, being consistent with the state court's holdings and not clearly erroneous, are entitled to our deference. The district court found that Winfrey was seventeen and of subnormal intelligence; that he was questioned with no lawyer or parent present after his mother had specifically asked Baumann not to allow that; and that he thought it was relevant to the seriousness of his crime whether the shooting was accidental (though the state court instructed the jury at trial that Winfrey could not be acquitted on the grounds the shooting was accidental if it was committed in the course of a robbery).

In addition to the facts the state and district courts found, there are several relevant undisputed facts—that Winfrey had prior experience with the police, that he asked Steiner to come to talk to him, and that before his confessions his two attorneys had told him not to talk to anyone about his case.

■ Based on the state and district court findings and the undisputed facts, we conclude that Winfrey's confession was voluntary. The primary facts suggesting coercion are Winfrey's age and low IQ. Yet, in past cases this court considered facts similar to these and held that confessions were voluntary. *Hall v. Wolff*, 539 F.2d 1146 (8th Cir.1976) (defendant 19 years old, of low order of intelligence); *Coney v. Wyrick*, 532 F.2d 94 (8th Cir.1976) (defendant 16 years old, of "subnormal intelligence"). *Accord, Vance v. Bordenkircher*, 692 F.2d 978 (4th Cir.1982), *cert. denied*, 464 U.S. 833, 104 S.Ct. 114, 78 L.Ed.2d 114 (1983) (defendant 15 years old, IQ of 62, no lawyer or parent present).

The district court placed special emphasis on Dr. Loeffelholz's testimony and Winfrey's age and mental status. The district court's opinion was issued without benefit of the decision of the Supreme Court in *Colorado v. Connelly*, — U.S. —, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), which was decided some two months after the district court decision. In *Connelly* the Supreme Court held that Connelly's statements made while in a psychotic state were admissible in the absence of police coercion. Certainly, Winfrey's dull normal intelligence and mental age of 14 or 15 at age 18 reflect capacity less reduced than Connelly's and, in the facts as found by the state courts, there is no significant evidence of state coercion in this case. Therefore, under *Connelly*, Winfrey's weak mental abilities, standing alone, do not render his confession involuntary under the due process clause.

The district court emphasized that no lawyer or parent was present at the time of Winfrey's confession and cited Iowa Code § 232.11 (1987)[4] in support of its conclusion that the absence of Winfrey's mother or attorney rendered his confession involuntary. The district court conceded that Iowa Code § 232.11 was enacted after the events in question and was therefore not applicable to Winfrey's case. At any rate, this court has held that parental presence is not mandatory for a juvenile's confession to be considered voluntary under federal law. *Rone v. Wyrick*, 764 F.2d 532, 535 (8th Cir.1985). Moreover, we cannot conclude that the absence of Winfrey's mother and lawyer point to state coercion in light of the Iowa Supreme Court's finding that the officers suggested the mother and lawyer be present and that Winfrey rejected their suggestion. The district court observed that the police "claimed" they urged Winfrey to have his mother or lawyer present, yet did not contact the mother or lawyer; but, the police's failure to contact the mother or lawyer is explained by the state court finding that Winfrey himself rejected the idea of having them present. The district court also stated that Lt. Steiner "maintained that a signed waiver and/or confession would be no good unless [Winfrey's] mother or attorney were present." The transcript page cited in support of the district court's statement actually contains only a statement by Steiner that his department would not allow a minor to sign anything without his mother or lawyer being present. Again, any significance of this evidence is vitiated by Winfrey's refusal to have his mother or lawyer present when he confessed.

The district court also stressed the fact that Winfrey believed it might make some difference to his punishment whether the shooting was accidental. The Iowa Supreme Court expressly found the officers made no promises of leniency. Therefore, if Winfrey was encouraged to talk by an

---

**4.** Iowa Code § 232.11, subd. 2 provides in relevant part:

The child's right to be represented by counsel [during questioning by a peace officer when in custody for certain alleged delinquent acts] shall not be waived by a child less than sixteen years of age without the written consent of the child's parent, guardian or custodian. The waiver by a child who is at least sixteen years of age is valid only if a good faith effort has been made to notify the child's parent, guardian, or custodian that the child has been taken into custody and of the alleged delinquent act for which the child has been taken into custody, the location of the child, and the right of the parent, guardian, or custodian to visit and confer with the child.

It is not clear what significance the district court attributed to the statute in light of the facts that Winfrey was more than sixteen and his mother had been to the jail to see him.

erroneous belief that he would negate an element of the charge against him, this was his own mistake and not due to state trickery. *Cf. Rachlin v. United States,* 723 F.2d 1373, 1378 (8th Cir.1983) (holding voluntary statements "offered in the hope of leniency, and not as a response to a promise of leniency").

Finally, the district court relied on its finding that Winfrey and Baumann had a "special relationship" and had had "several long 'rap' sessions during the past few years." The fact that Baumann and Winfrey had been friendly is not relevant in absence of evidence of deception, *see, e.g., Spano v. New York,* 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959), or encouragement of the accused to forget that he was talking to the police and that his words would be used against him. *Miller v. Fenton,* 796 F.2d 598, 607 (3d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 585, 93 L.Ed. 2d 587 (1986). The state court findings reject Winfrey's accusation of deception by Baumann by finding that Baumann made no promise of leniency and that Winfrey understood his *Miranda* rights. Further, Baumann's actions in bringing in officer Steiner and suggesting Winfrey's mother and attorney be present show that this was not a case where the accused was lulled into the belief that his right against self-incrimination was irrelevant.

Since there was no evidence of state coercion, the district court's reliance on Winfrey's amenability to coercion was misplaced. Likewise, the court's citation of *Woods v. Clusen,* 794 F.2d 293 (7th Cir. 1986), a case in which there was significant evidence of state coercion by use of "intimidating and deceptive tactics," 794 F.2d at 295, is not instructive. We conclude that Winfrey's confessions were voluntary and admission of them at trial impaired no constitutional right.[5]

The judgment is reversed.

---

5. Winfrey also argues that his *Miranda* rights and right to counsel were violated when Baumann talked to him on Saturday, April 8. In light of the facts that the Saturday talk clearly was not an interrogation and Baumann prevented Winfrey from talking about the case on Saturday, we summarily reject this argument.